IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| TEMPEST HORSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 13-321 |
| | ) | |
| JESSICA TRAME, in her official | ) | |
| capacity as Chief of the Firearms | ) | |
| Services Bureau, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

NOW COMES the Defendant, JESSICA TRAME, by and through her attorney, Lisa Madigan, Attorney General for the State of Illinois, and hereby submits her memorandum of law in support of her Motion to Dismiss, stating as follows:

**INTRODUCTION**

Plaintiff was 18 years old at the time she filed her complaint in April, 2013. Plaintiff seeks, via 42 U.S.C. § 1983, a mandatory injunction requiring the Illinois State Police to accept for processing her application for a Firearm Owners Identification ["FOID"] without a signature of a parent or legal guardian, notwithstanding the requirement in section 4(a)(2)(i) of the Firearm Owners Identification ["FOID"] Card Act (430 ILCS 65/0.01 *et seq.*) that applicants under the age of 21 have the consent of a parent or guardian. Plaintiff also seeks an injunction preventing the Illinois State Police from rejecting the application of any person over the age of 18 under section 4(a)(2)(i) based on age.

The FOID Card Act prohibits, with certain exceptions, the acquisition or possession of firearms unless the individual possesses a Firearm Owner's Identification ["FOID"] card.

1

430 ILCS 65/2. A person under the age of 21 may obtain a FOID card if she has the written consent of a parent or legal guardian who is not disqualified from obtaining a FOID card. 430 ILCS 65/4(a)(2)(i).

Plaintiff contends that she has a Second Amendment right to keep and bear arms for self-defense, and that such right vested at the moment Plaintiff turned 18. (Doc. #1, Compl. ¶ 13.) Plaintiff further contends that section 4(a)(2)(i) of the FOID Card Act is an unconstitutional restriction on Plaintiff's Second Amendment right.

Plaintiff's complaint should be dismissed because Plaintiff has alleged no activity protected by the Second Amendment. Alternatively, the complaint should be dismissed because the FOID Card Act survives intermediate scrutiny under the Second Amendment.

## ISSUES AND ARGUMENT

Analysis of a claim under the Second Amendment is a two-step inquiry: (1) a threshold determination "requiring textual and historical inquiry into original meaning" of whether the restricted activity is protected by the Second Amendment; and (2) if the activity is protected, a determination and application of the appropriate level of Second Amendment scrutiny, or "means-end" review. *Ezell v. City of Chicago*, 651 F.3d 684, 701–07 (7th Cir. 2011); *Nat'l Rifle Ass'n of America, Inc.*, 700 F.3d at 194, 204 (5th Cir. 2012); *U.S. v. Reese*, 627 F.3d 792, 800–01 (10th Cir. 2010); *U.S. v. Marzzarella,* 614 F.3d 85, 89 (3d Cir. 2010); *see also District of Columbia v. Heller*, 554 U.S. 570, 634–35 (2008) ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad.").

2

I.   **The Possession of Firearms By Persons Under the Historical Age of Majority, or 21 Years, Is Not Within the Scope of the Second Amendment.**

Although the Seventh Circuit has not addressed the application of the Second Amendment to persons under the age of 21, it has held that categorical limits on the right to bear arms are permissible, much in the same way that certain categories of speech fall outside the protection of the First Amendment. *U.S. v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (prohibition on possession of firearms by convicted felons constitutional). The legislature "is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons." *Id.*

In the absence of controlling case law from the Seventh Circuit, this Court should look to the decisions of other federal courts of appeal for guidance, affording them "most respectful consideration . . . and follow[ing] them whenever [the Court] can." *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1121 (7th Cir. 1987). "Although decisions of other circuits are not necessarily controlling, the district courts should give them substantial weight" and must "show appropriate deference before rejecting the direct authority of a sister circuit." *Richards v. Local 134, Int'l. Bhd. of Elec. Workers*, 790 F.2d 633, 636 (7th Cir. 1986).

The Fifth Circuit has held that persons under the historical age of majority, that is, under the age of 21, fall outside of the protections of the Second Amendment. *Nat'l Rifle Ass'n of America, Inc. v. McCraw*, --- F.3d ----, 2013 WL 2156571, at *5 (5th Cir. 2013); *Nat'l Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 204 (5th Cir. 2012). The District Court of Massachusetts recently reached the same conclusion. *Powell v. Tompkins*, --- F. Supp. 2d ----, 2013 WL 765339 at *15–16 (D. Mass. 2013) (holding that "proscription against grants of licenses to carry firearms to

3

adults under the age of twenty-one comports with the Second Amendment and imposes no burden."). These courts reached their holdings after in-depth textual and historical analysis of the scope of the Second Amendment at its founding and at the time of incorporation via the Fourteenth Amendment, as *Heller* and *Ezell* instruct. *See Nat'l Rifle Ass'n of America, Inc.*, 700 F.3d at 200–03 (collecting authorities); *Tompkins*, --- F. Supp. 2d ----, 2013 WL 765339 at *14–15 (same). The courts found that at the Founding and in the mid-Nineteenth Century, legislatures, courts, and commentators recognized the validity of firearms restrictions as to categories of individuals, including persons under the age of 21, noting that such individuals were considered "minors" at the time. *Nat'l Rifle Ass'n of America, Inc.*, 700 F.3d at 200–03; *Tompkins*, --- F. Supp. 2d ----, 2013 WL 765339 at *14–15.

In the absence of controlling Seventh Circuit case law, this Court should follow the persuasive authority of the Fifth Circuit and the similar analysis of the District Court of Massachusetts and hold that the Second Amendment's scope does not extend to protecting the activity of persons under 21, the historical age of majority.

## II.     The FOID Card Act Is Constitutional Under Intermediate Scrutiny.

### A.     The Court Should Apply Intermediate Scrutiny to the FOID Card Act.

Even if the Court rejects the analysis of the Fifth Circuit and concludes that the Second Amendment's scope extends to persons under the age of 21, the law at issue passes "means-end" scrutiny. The Seventh Circuit has not addressed the level of scrutiny that should apply to a categorical limit based on age, such as the one involved here, but the Court has suggested that intermediate review is appropriate for such categorical

4

restrictions and has directly held that intermediate review applies to categorical bans on the right to bear arms as applied to convicted felons. *U.S. v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010); *Skoien*, 614 F.3d at 642. Further, other Circuits and the State of Illinois have held that intermediate review applies to age restrictions under the Second Amendment. *Nat'l Rifle Ass'n of America, Inc.*, 700 F.3d at 204 (alternative holding that federal law prohibiting the purchase or sale of firearms by persons under 21 was constitutional under intermediate scrutiny); *People v. Alvarado*, 2011 IL App (1st) 082957, ¶ 66, 964 N.E.2d 532, 547–48 (Ill. App. 2011) (upholding Illinois' restrictions on the possession of firearms by persons under 21); *see also Tompkins*, --- F. Supp. 2d ----, 2013 WL 765339 at *15–16 (alternative holding that Massachusetts' age-restriction was constitutional under intermediate scrutiny).

Under intermediate scrutiny, "the government has the burden of demonstrating that its objective is an important one and that its objective is advanced by means substantially related to that objective." *Williams*, 616 F.3d at 692. Stated another way, a categorical restriction based on age may be justified by showing "a reasonable fit between the law and an important government objective." *McCraw*, --- F.3d ----, 2013 WL 2156571, at *6. The requisite 'fit' between the legislature's ends and the means chosen to accomplish those ends need not be perfect, but reasonable, and need not be "the single best disposition but one whose scope is in proportion to the interest served." *ACLU of Illinois v. Alvarez*, 679 F.3d 583, 604–05 (7th Cir. 2012) (First Amendment case); *see also Woollard v. Gallagher*, 712 F.3d 865, 878–79 (4th Cir. 2013) (Second Amendment) (reasonable fit need not be

the least intrusive means). Moreover, categorical limits need not be established by evidence presented in court. *Skoien*, 614 F.3d at 604–05.

**B.    Section 4(a)(2)(i) of the FOID Card Act Survives Intermediate Scrutiny.**

**1.    The State has a substantial, important interest in maintaining public safety.**

Here, the State has a substantial interest in maintaining the public safety and restricting firearm possession to responsible persons. *See Williams*, 616 F.3d at 693 ("[N]o one doubts that . . . preventing armed mayhem . . . is an important governmental objective." (quoting *Skoien*, 614 F.3d at 642) (alteration in original)). The FOID Card Act is a public safety statute. *Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 442 (7th Cir. 2009). It prohibits, with certain exceptions, the acquisition or possession of firearms unless the individual possesses a FOID card. 430 ILCS 65/2. Exceptions are made for hunting, competitive shooting, and, under the supervision of a card-carrying person 21 years or older, shooting ranges and safety and training courses. 430 ILCS 65/2(b)(14)–(16). Felons, drug addicts, mental patients, aliens, intellectually disabled persons, persons convicted of certain crimes of violence, and certain other persons are disqualified from obtaining a FOID card. 430 ILCS 65/4(a)(2). Persons under the age of 21 must have the written consent of a parent or guardian. 430 ILCS 65/4(a)(2)(i). In recognition of the dangers posed by possession of firearms by the immature, the parent or legal guardian giving consent for an individual under the age of 21 is liable for any damages resulting from that individual's use of firearms or ammunition. 430 ILCS 65/4(c).

      2.      **Restricting possession of firearms to persons over the age of 21 is substantially related to, and represents a reasonable, proportional means of furthering, the State's important interest in maintaining public safety.**

In *Alvarado*, the Illinois Appellate Court addressed Illinois' substantial interest in public safety in the context of an aggravated unlawful use of a weapon (AUUW) statute criminalizing carrying of handguns by persons under 21 years of age. *Alvarado*, 2011 IL App (1st) 082957, ¶¶ 62, 68–70, 964 N.E.2d 532, 546–49; 720 ILCS 5/24-1.6, *held unconstitutional on other grounds by Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), *but see People v. Moore,* 2013 IL App (1st) 110793, ¶¶ 1, 17–18, 987 N.E.2d 442, 442–43, 445–46 (Ill. App. 2013) (upholding the AUUW statute and refusing to follow *Moore v. Madigan*, 702 F.3d 933, noting splits in authority among the federal circuit courts and holding that decisions by the federal courts of appeal are not binding on state courts absent a decision from the United States Supreme Court). The *Alvarado* court found that possession of a handgun in public by an 18-20-year-old is not at the core of the right to bear arms. *Alvarado*, 2011 IL App (1st) 082957, ¶ 64, 964 N.E.2d at 547. The court noted that the statute was not a total ban, but involved age limits while preserving exceptions and exemptions, similar to the FOID Card Act, for young adults to engage in lawful activities such as hunting and target shooting. *Id.* at ¶¶ 61, 66, 964 N.E.2d at 546–48. The court further noted:

> [T]he [AUUW] statute intended to prevent situations where no criminal intent existed, but criminal conduct resulted despite the lack of intent, e.g., accidents with loaded guns on public streets or the escalation of minor public altercations into gun battles or * * * the danger of a police officer stopping a car with a loaded weapon on the passenger seat. Even innocent motivations could be transformed into culpable conduct because

of the accessibility of weapons as an outlet for subsequently kindled
aggression.

*Id.* at ¶ 68, 964 N.E.2d at 548 (citations and internal quotation marks omitted). The court

specifically noted that the legislature was justified in treating individuals under the age of

21 differently:

> [W]e recognize that the challenged statutory provision here restricts
> someone under 21 from carrying a handgun in public, regardless of
> whether the handgun is loaded and immediately accessible. Comments
> made during the legislative debates indicate that the legislature
> recognized that it was treating adults under 21 years of age differently in
> order to 'recognize the activity of gang members or young kids in certain
> parts of the state that are active in gangs' and address the concern that
> gang members should be one of the groups targeted by this legislation.
> 91st Ill. Gen. Assem., House Proceedings, April 10, 2000, at 54–55
> (statements of Representative Cross).
>
> We conclude from that discussion that the legislature sought to deter
> 18–to–20 year-old adults from carrying handguns, which threaten both the
> public and police officers, because the 18–to–20–year–old group was
> heavily at risk for illegal gang-related activity. Furthermore, that age group
> was more likely to be directly interacting with and, thus, endangering
> juveniles. We find that the challenged provision serves a substantial and
> important government interest to reduce in this state the armed violence
> and illegal activity of street gangs and others by preventing those under
> 21 years of age from carrying handguns in public, except in certain limited
> circumstances.

*Id.* at ¶ 69–70, 964 N.E.2d at 548–49.

In *Nat'l Rifle Ass'n of America, Inc.*, 700 F.3d 185, the Fifth Circuit cited findings of

Congress that "juveniles account for some 49 percent of the arrests for serious crimes in

the United States," while "minors [under the age of 21] account for 64 percent of the total

arrests in this category." *Id.* at 208 (quoting S.Rep. No. 90–1097, at 77). "[M]inors under

the age of 21 years accounted for 35 percent of the arrests for the serious crimes of

violence including murder, rape, robbery, and aggravated assault, and 21 percent of the

arrests for murder." *Id.* The court noted Congress's concerns that firearms be kept out of the hands of "emotionally immature, or thrill-bent juveniles and minors [under 21] prone to criminal behavior." *Id.* The court cited extensive research and data showing that 18-to-20-year-olds account for a disproportionately high percentage of arrests for violent crimes, that "[a]mong murderers, 18 to 20 year olds were more likely to use a firearm than adults 21 and over," and that "modern scientific research supports the commonsense notion that 18–to–20–year–olds tend to be more impulsive than young adults aged 21 and over." *Id.* at 209–10 & nn.20–21.

The provision challenged here is a reasonable, proportional fit to the goal of maintaining public safety and preventing violent crime. As noted above, individuals aged 18-20 are disproportionately more likely to commit violent crimes and to use firearms in the commission of those crimes. These individuals are also more likely to interact with juveniles, thereby placing juveniles at risk of gun violence as well. *Alvarado*, 2011 IL App (1st) 082957, ¶ 70, 964 N.E.2d at 548. To address these risks of violence, the legislature has crafted a restriction based on the age of the individual. This restriction is limited in time, as persons falling under its purview will quickly age out of the restriction. The restriction is also limited in scope, as exceptions are allowed for hunting and target practice, and for situations in which the under-21 individual obtains the consent of her parent or guardian.

No doubt there are individuals aged 18–20 who have reached the level of maturity necessary for responsible possession and use of firearms. Certainly there are many who have not. *See Nat'l Rifle Ass'n of America, Inc.*, 700 F.3d at 209–10 & nn.20–21 (citing

crime statistics and research noting that "[t]he brain's frontal lobes are still structurally immature well into late adolescence, and the prefrontal cortex is one of the last brain regions to mature. This, in turn, means that response inhibition, emotional regulation, planning and organization . . . continue to develop between adolescence and young adulthood" (internal quotation marks omitted)); *Alvarado*, 2011 IL App (1st) 082957, ¶ 68–70, 964 N.E.2d at 547–49. In similar fashion, no doubt certain individuals under the age of 16 are capable of responsibly operating a motor vehicle; no doubt certain individuals under the age of 21 can imbibe liquor responsibly. Yet, the line must be drawn somewhere. Such categorical exclusions are permissible and the legislature "is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons." *Skoien*, 614 F.3d at 641. It is worth noting that according to Plaintiff's own allegations, her parents will not give their consent (Doc. #1, Compl. ¶ 14), implicitly acknowledging that Plaintiff's own parents do not feel Plaintiff is, at the age of 18, sufficiently responsible to possess and bear a firearm.

## CONCLUSION

In the absence of controlling authority from the Seventh Circuit, this Court should follow the well-reasoned opinion of the Fifth Circuit and hold that possession of firearms by individuals under the historical age of majority, or 21 years, does not fall within the scope of the Second Amendment. In the alternative, the Court should uphold the constitutionality of the FOID Card Act's age-based restrictions as substantially related to the government's important interest in maintaining public safety and preventing violent crime.

WHEREFORE, Defendant requests this honorable Court dismiss the complaint with prejudice.

Respectfully submitted,

JESSICA TRAME, in her official capacity as
    Chief of the Firearms Services Bureau,

    Defendant,

LISA MADIGAN, Attorney General,
State of Illinois

    Attorney for Defendant,

By: s/ Joshua D. Ratz
    Joshua D. Ratz, #6293615
    Assistant Attorney General
    500 South Second Street
    Springfield, Illinois  62706
    (217) 785-4555  Phone
    (217) 524-5091  Fax
    E-Mail:  jratz@atg.state.il.us

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| TEMPEST HORSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 13-321 |
| | ) | |
| JESSICA TRAME, in her official | ) | |
| capacity as Chief of the Firearms | ) | |
| Services Bureau, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2013, the foregoing document, Memorandum of

Law in Support of Motion to Dismiss, was electronically filed with the Clerk of Court using

the CM/ECF system which will send notification of such filing to the following:

Thomas G. Maag
tmaag@maaglaw.com

and I hereby certify that on June 14, 2013, a copy of the foregoing document was

mailed by United States Postal Service, to the following non-registered participant:

None.

Respectfully Submitted,

s/ Joshua D. Ratz
Joshua D. Ratz, #6293615
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62706
(217) 785-4555  Phone
(217) 524-5091  Fax
E-Mail:  jratz@atg.state.il.us

12