IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TEMPEST HORSLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 13-cv-00321-WDS-SCW |
| | ) |
| **JESSICA TRAME, in her official capacity as** | ) |
| **Chief of the Firearms Services Bureau,** | ) |
| | ) |
| **Defendant.** | ) |

## MOTION FOR SUMMARY JUDGMENT

Comes now Defendant Tempest Horsley, by and through her attorneys Thomas G. Maag and the Maag Law Firm, LLC, and for her Motion for Summary Judgment, states as follows:

### INTRODUCTION

This case raises the question of whether an 18 year old has a constitutional right to keep and bear arms, or whether persons between the age of 18 and 21 are considered, quite literally, second class citizens. Plaintiff desires to keep a shotgun, or any other kind of firearm, in her own home, for self-defense. The legal issue of Plaintiff's rights under the Second Amendment have already been substantially briefed by the parties in relation to Defendant's Motion to Dismiss. As this case raises wholly legal issues, summary judgment is appropriate at this time.

### BACKGROUND

As is clear from the record, Plaintiff is an 18 year old that applied for a Firearms Owners Identification Card ("FOID" or "FOID card"), which, per Illinois statute is required by almost all persons to lawfully acquire, make or possess a firearm of any description, be it a rifle, shotgun,

pistol, revolver or otherwise, or for that matter, a non-lethal taser or stun gun, in Illinois. Possession of a firearm without a FOID card in a person's possession is a crime. In fact, per the statute, it could be a felony.[1] The Illinois State Police rejected the FOID card application of Plaintiff based on her age of less than 21 years of age, and the fact that it lacked her parent's signature and along with the signature, the promise of the signing parent to be civilly liable for any incidents arising from the Plaintiff's use of any firearms. Ex. A.

Plaintiff seeks, via 42 U.S.C. § 1983, a mandatory injunction requiring the Illinois State Police to accept for processing her application for a Firearm Owners Identification ["FOID"] without a signature of a parent or legal guardian, notwithstanding the purported requirement in section 4(a)(2)(i) of the Firearm Owners Identification Card Act (430 ILCS 65/0.01 et seq.) that applicants under the age of 21 have the consent of a parent or guardian. It is also undisputed that Plaintiff also seeks an injunction preventing the Illinois State Police from rejecting the application of any person over the age of 18 under section 4(a)(2)(i) based on age.

It is undisputed that the FOID Card Act prohibits, with certain exceptions, the acquisition or possession of firearms unless the individual possesses a Firearm Owner's Identification card. 430 ILCS 65/2.

It is also undisputed that a person under the age of 21 may obtain a FOID card if she has the written consent of a parent or legal guardian who is not disqualified from obtaining a FOID card. 430 ILCS 65/4(a)(2)(i). There is no alternative to parental consent, and no method to compel it.

---

[1] While the statute makes the possession of a firearm without a FOID card a criminal offense, the Illinois Circuit Court for Cook County recently, in *People v. Mosley*, Case No. 12-CR-5646-01 (Cook County, Mar. 15, 2013), declared a portion of Illinois's Unlawful Use of Weapon's statute unconstitutional on grounds related to those addressed herein. A copy of the *Mosley* case is attached for the Court's reference.

It is undisputed that a person of at least 18 years of age, who is not disabled, cannot have a legal guardian in Illinois, unless they are disabled.

It is undisputed that Plaintiff is not disabled.

The only real question presented to this Court is a legal one, that being whether an 18 year old citizen of the United States and Illinois has any rights whatsoever under the Second and Fourteenth Amendments, and if so, are they subject to parental veto.

## LEGAL STANDARD OF A SUMMARY JUDGMENT MOTION

A district court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c): see also, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Popovits v. Circuit City Stores, Inc*., 185 F.3d 726, 731 (7th Cir. 1999). The moving party initially bears the burden of demonstrating an absence of genuine issues of material fact, indicating that judgment should be granted as a matter of law. *Lindemann v. Mobil Oil Corp*., 141 F.3d 290, 294 (7th Cir. 1999) (citing *Celotex*, 477 U.S. at 323). Once a motion for summary judgment has been made and properly supported, however, the non-movant has the burden of setting forth specific facts showing the existence of a genuine issue for trial. See id. In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, the Court will not resolve factual disputes, weigh conflicting evidence, or make credibility determinations. See *Ritchie v. Glidden Co*., 242 F.3d 713, 723 (7th Cir. 2001); *Miranda v. Wis. Power & Light Co*., 91 F.3d 1011, 1014 (7th Cir. 1996).

**ARGUMENT**

To a certain extent, this motion is a mere procedural technicality. Either the Second Amendment does not apply to 18 year olds and this case must be dismissed (something Plaintiff strenuously disputes), or, alternatively, 18 year olds have rights under the Second Amendment, and Plaintiff is entitled to judgment in her favor as a matter of law. For lack of a better analogy, this is a flip of a coin case, its either heads or tails, unless Defendant wishes to contest the basic factual matters in this case that Plaintiff considers not only undisputed, but undisputable.

As is quite clear from the record, Plaintiff has the right to keep and bear arms, for her own defense, inside of her home. *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 3025 (2010). In this case, Plaintiff is only seeking, as a matter of substantive relief, an order compelling the issuance of a FOID card, which will allow her to lawfully acquire and possess, *inter alia*, a double barrel shotgun, as famously was recently suggested for home defense by Vice President of the United States, Jo Biden. As the record makes clear, Illinois statutes prohibit the issuance of a FOID card to 18, 19 and 20 year olds without a parents consent and signature. Thus, as the parent's consent and signature is unavailable (Ex.B), for whatever reason, Illinois statutes are infringing on Plaintiff's ability to possess any and all kinds of firearms, in all locations, including but not limited to double barrel shotguns in the home, in violation of the Second and Fourteenth Amendments.

**THE RIGHT TO KEEP AND BEAR ARMS IS A RIGHT THAT BELONGS TO ALL AMERICANS, INCLUDING 18 YEAR OLDS, BY VIRTUE OF THE FACT THAT THEY ARE AMERICANS**

As is clear from the record and the case law, Plaintiff is one of the "people" that for whom our Constitution was written. Interestingly enough, as previously noted in this case, if Plaintiff was pregnant, and 17 years old (one year younger than she actually is), the state could

not impose a blanket parental consent requirement in order to obtain an abortion. See *Planned Parenthood v. Danforth*, 428 U.S. 52 (U.S. 1976). Yet, this blanket parental consent requirement, struck down in *Planned Parenthood* for 17 year olds seeking abortions, is being imposed on 18 year olds seeking to own plain ordinary firearms. For this Court to sustain the challenged requirement in this case, this Court will be obliged to find Plaintiff's Second Amendment rights to be inferior to her abortion rights.

As a matter of law, it is beyond dispute that the Second Amendment, as incorporated by the Fourteenth Amendment, protects the right of the individual citizen of this country to keep and bear arms for private self-defense, and that this right is at its absolute highest, in the home. *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago,* 561 U.S. 3025 (2010). These are the exact rights that Plaintiff wishes to exercise, the possession of some kind of firearm that is in common use at this time, for self-defense, inside of her own home. (Ex. B).

As was settled by our Supreme Court decades ago, constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. *Planned Parenthood v. Danforth*, 428 U.S. 52, 75 (U.S. 1976). Minors, as well as adults, are protected by the Constitution and possess constitutional rights. *Id*. Citing See, e. g., *Breed v. Jones*, 421 U. S. 519 (1975); *Goss v. Lopez*, 419 U. S. 565 (1975); *Tinker v. Des Moines School Dist.*, 393 U. S. 503 (1969); *In re Gault*, 387 U. S. 1 (1967). The right to keep and bear arms for self-defense in the home is, in fact, a fundamental constitutional right. *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago,* 561 U.S. 3025 (2010).

The Supreme Court of the United States has stated, "[w]hile this textual exegesis is by no means conclusive, it suggests that "the people" protected by the Fourth Amendment, and by the

First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *U.S. v. Vergudo-Urquidez*, 494 U.S. 259 (1990).  In fact, in *Heller*, our Supreme Court stated that "[w]e start therefore with a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *District of Columbia v. Heller*, 554 U.S. 570, 577 (U.S. 2008).  "The right of the whole people, old and young, men, women and boys, and not militia only, to keep and bear arms of every description, and not such merely as are used by the militia, shall not be infringed, curtailed, or broken in upon, in the smallest degree." *Heller*, 554 U.S. at 612-13 (quoting with approval *Nunn v. Georgia*, 1 Ga. 243, 250 (1846).

Plaintiff acknowledges that our Supreme Court, in dicta, made reference to not invalidating laws restricting arms to felons and the mentally ill. However, Plaintiff is none of those things, she is simply an 18 year old adult with no criminal, mental health or other disqualifying record, and who, under federal law, and the law of every single state in the Union, except Illinois and Hawaii, can buy and possess a rifle or shotgun, and desires to acquire some kind of firearm, any kind of firearm that is in common use for self-defense.  To be clear, 48 of the 50 states do not have the restrictions Illinois has on 18 year olds.  Illinois, like in *Moore v. Madigan*, 708 F.3d 901 (7th Cir. 2013), is the exception to the national rule, Illinois being an aberration by national standards, the same as both Washington D.C. and Chicago's ban on handguns, and Illinois recently invalidated ban on carrying firearms outside of the home.  This aberration must be aborted.

Plaintiff is no child.  She is 18 years of age, one full year older than the 17 year old who it was determined did not need parental consent to obtain an abortion in *Planned Parenthood*

cited *infra*. At the age of 18, the judge assigned to this case was a U.S. Navy Lieutenant fighting in W.W. II. www.fjc.gov/servlet/nGetInfo?jid=2296&cid=67&ctype=dc&instate=il   Were Plaintiff to commit a federal crime, there is no doubt that this Court would try and sentence her as an adult. While children cannot be executed for their crimes, an 18 year old adult can. *Roper v. Simmons*, 543 U.S. 551 (U.S. 2005). Plaintiff, as an 18 year old, can own land in her own name, vote in federal and state elections, sue and be sued. In every state of the Union, except Hawaii and Illinois, Plaintiff could buy and possess, without any restriction not imposed on a person over 21, a rifle or shotgun at her whim. In fact, the entire FOID act, which is not challenged except on this narrow point related to parental signatures as a prerequisite for qualification, is an aberration by national standards.

While Plaintiff would prefer a double barrel shotgun, as recently suggested by our Vice-President, at the end of the day, nearly any kind of firearm in common use will do. But the State of Illinois, a state not known for its liberal firearms laws or zealous defense of Second Amendment rights, says no, without parental consent and parental indemnification of Plaintiff.

Second Amendment claims, such as this case, are to be evaluated based on the constitutional text, the history of colonial and Founding-Era firearms restrictions, and the fire-arms traditions of the American people, not on balancing tests. *Heller*, 554 U.S. at 605, 626-27,634-35. Similarly, in *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010), the Court expressly rejected judicial assessment of "the costs and benefits of firearms restrictions" and declared that courts applying the Second Amendment should stick to historical exegesis and spurn litigants' pleas that the courts make "difficult empirical judgments about the efficacy of particular gun regulations." Id. at 3050 (plurality). "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future

legislatures or (yes) even future judges think that scope too broad." *Heller*, 554 U.S. at 634-35.
When a Second Amendment claim is put forward, "historical justifications" thus determine the scope of the right. Id. at 635.  As to whether or not it is a good idea, or not, to restrict 18 year olds access to all kind of firearms, that is a cost benefit analysis, which *McDonald* says this Court does not get to make.

As to colonial or Founding-Era firearms laws, the undersigned could not find a single statute of that era which prohibited the possession of arms by 18 year olds because of their status as an 18 year old, and alas, Defendant thus far has failed to cite one[2]. In fact, if this were the 18th Century, or even earlier, and Plaintiff a male, the thought of her owning a firearm at age 18 would be uncontroversial and commonplace.  For instance, as cited by our Supreme Court in *U.S. v. Miller*, 307 U.S. 174 (U.S. 1939), in the Colonial and Founding Era[3],

1. "The General Court of Massachusetts, January Session 1784, provided for the organization and government of the Militia. It directed that the Train Band should "contain all able bodied men, **from sixteen to forty years of age**, and the Alarm List, all other men under sixty years of age, . . ."
2. In New York, "[t]hat every able-bodied Male Person, being a Citizen of this State, or of any of the United States, and residing in this State, (except such Persons as are hereinafter excepted) **and who are of the Age of Sixteen, and under the Age of Forty-five Years**, shall, by the Captain or commanding

---

[2] Even today, apparently only Illinois and Hawaii restrict the right or ability of 18 year olds to own rifles or shotguns due to their age.
[3] Plaintiff acknowledges that the *Heller* decision divorced from Second Amendment analysis any duty to serve in, or connection with the militia.  The reference to the various militia acts and statutes is made not to ask this court, or any higher court, to change that finding, but rather, to demonstrate that 18 year olds, and in fact, often times persons under 18 year of age, at the time of the adoption of the Second Amendment, were legally well armed.

> Officer of the Beat in which such Citizens shall reside, within four Months after the passing of this Act, be enrolled in the Company of such Beat. ."
>
> 3. In Virginia, ""**All free male persons between the ages of eighteen and fifty years,"** with certain exceptions, "shall be inrolled or formed into companies."

At the federal level, The Militia Act of 1792, Passed May 8, 1792, provided federal standards for the organization of the Militia, and stated, in relevant part, "That each and every free able-bodied white male citizen of the respective States, resident therein**, who is or shall be of age of eighteen years,** and under the age of forty-five years (except as is herein after excepted) shall severally and respectively be enrolled in the militia…"

While the minimum ages ranged, as was typical across the colonies, from sixteen to eighteen, for militia duty, in no colony during the Colonial or Founding Era, either before or after the Revolution and/or adoption of the Second Amendment, was an eighteen year old excluded as being too young to keep and bear arms.  In fact, then General George Washington, in an enclosure to a 1783 letter to Alexander Hamilton, the one and same General Washington—who as President signed the 1792 Militia Act into law—wrote that "the Citizens of America ... from 18 to 50 Years of Age should be borne on the Militia Rolls" and "so far accustomed to the use of [Arms] that the Total strength of the Country might be called forth at a Short Notice on any very interesting Emergency."  Sentiments on a Peace Establishment (May 2, 1783), reprinted in 26 THE WRITINGS OF GEORGE WASHINGTON 389 (John C. Fitzpatrick, ed. 1938).

In sum, to suggest that the writers of the Second Amendment did not intend to protect the rights of 18 year olds is intellectually dishonest, and again, as was settled by our Supreme Court decades ago, constitutional rights do not mature and come into being magically only when one

attains the state-defined age of majority.  *Planned Parenthood v. Danforth*, 428 U.S. 52, 75 (U.S. 1976).

In sum, 18, 19 and 20 year old U.S. Citizens are part of "the people" to which Constitutional rights, including Second and Fourteenth Amendment rights attach, as constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority.  *Planned Parenthood v. Danforth*, 428 U.S. 52, 75 (U.S. 1976)

**THE PROHIBITION SURVIVES NO LEVEL OF SCRUTINY**

"In harmony with well-developed principles that have guided [the] interpretation of the First Amendment, […] a law impinging upon the Second Amendment  right must be reviewed under a properly tuned level of scrutiny—i.e.,  a level that is proportionate to the severity of the burden that the law imposes on the right." *N.R.A. v. BATF*, Appeal No. 11-10595 (5th Cir. Oct. 25, 2012, page 17).

At its core, the Second Amendment protects the right of law-abiding citizens to possess weapons in common use[4] for self-defense in the home.  *U.S. v. Marzzarella,* 614 F.3d. 85, 92 (3rd Cir. 2010) *citing Heller,* 128 S.Ct. at 2821.

"[T]he rigor of this judicial review will depend on how close the law comes to the core Second Amendment right and the severity of the law's burden on the right." *Ezell*, 651 F.3d at 701-03, 708-09.  First, a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end. Second, laws restricting activity lying closer to the margins of

---

[4] The *Marzzarella* case actually uses the words "non-dangerous weapons", not "weapons in common use."  But logically, if a weapon was not dangerous, it would be as irrational to want to ban it (as it would be harmless) as it would be to want to possess it (as it would be useless).  The only reason under the Second Amendment to wish to possess a weapon would be that it is dangerous to an opponent in an altercation.

the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified. How much more easily depends on the relative severity of the burden and its proximity to the core of the right. Id. at 708." *Kole v. Village*, Case No. 11 C 3871. N.D. Illinois, Eastern Division. April 19, 2013. "A categorical ban on gun ownership by a class of individuals must be supported by some form of `strong showing,' necessitating a substantial relationship between the restriction and an important governmental objective." See *United States v. Booker*, 644 F.3d 12, 25 (1st Cir. 2011) *citing United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc).

Translated into plain English, bans on the right of armed self-defense get so called strict scrutiny review, and commercial transactions with modest burdens might get something closer to intermediate scrutiny. This is akin to First Amendment jurisprudence, as even with First Amendment law, not all First Amendment cases are subject to strict scrutiny.

To survive strict scrutiny, the statute "must be narrowly tailored to promote a compelling Government interest." *United States v. Playboy Entm't. Group,* 529 U.S. 803, 813, (2000); Generally, "a statute is narrowly tailored only if it targets and eliminates no more than the exact source of the `evil' it seeks to remedy." *See Ward v. Rock Against Racism*, 491 U.S. 781, 804, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (*quoting Frisby v. Schultz*, 487 U.S. 474, 485, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988)) (internal quotation marks omitted). Put another way, a statute is not narrowly tailored if "a less restrictive alternative would serve the Government's purpose." *See Playboy*, 529 U.S. at 813, 120 S.Ct. 1878. We must assure that the State does not "burn the house to roast the pig." *See Butler v. Michigan*, 352 U.S. 380, 383, 77 S.Ct. 524, 1 L.Ed.2d 412 (1957) (Frankfurter, J.). *Entertainment Software Association v. Blagojevich,* 469 F.3d 641, 646 (7th Cir. 2006).

It is respectfully submitted that, under strict scrutiny, any statute that criminalizes possession in the home of a firearm by a person in this country lawfully, not convicted of a serious crime, who has no substantial identified mental defect and which is not addicted to unlawful substances, should be presumptively invalid, the same as any regulations designed to restrain speech on the basis of its content.  See *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992); *City of Renton v. Playtime Theatres, Inc*., 475 U.S. 41, 47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *Stromberg v. California*, 283 U.S. 359, 368-69, 51 S.Ct. 532, 75 L.Ed. 1117 (1931).  Accordingly, the parental signature requirement should be stricken just as it was in *Planned Parenthood*, infra.

While Plaintiff does not dispute that the state has an interest in public safety and restricting firearm possession to responsible people, their logic fails, as it presumes (1) that 18 year olds who have parents that will sign their FOID application are less dangerous than 18 year olds who either have deceased parents, ineligible parents[5], missing parents, or parents who simply will not sign the form because they are obstinate, which is unlikely to be supportable even under a rational basis review, and/or (2) that the state has any legitimate interest in totally barring 18, 19 or 20 year olds from possessing arms in their own home, which it does not, as the right is protected by the Second Amendment, which takes the option of prohibiting it off the table, just like the handgun prohibition options were off the table in *Heller*  and *McDonald.*  In fact, as pointed out earlier in this brief, a parental consent requirement has already been invalidated in the abortion context (*Planned Parenthood v. Danforth*, 428 U.S. 52 (U.S. 1976)),

---

[5] In fact the requirement challenged here likely also fails as it seeks to impose restrictions based on corruption of blood, which, as memory serves, is prohibited by the Corruption of Blood Clause of Article III of our Constitution, should, for instance, Plaintiff's parents be long ago convicted felons.

and despite the wishes of some, including many in Illinois government, Second Amendment rights are not second class rights, they are fundamental rights.

The Defendant's argument further fails, as Federal Bureau of Investigation statistics show that many more people are murdered in Illinois with hands and feet than with rifles or shotguns. Ex.D. In fact, in 2011, 17 times as many people were murdered with hands and feet in Illinois than with shotguns, and there is no evidence that this single 2011 shotgun equipped murder was committed by an 18, 19 or 20 year old. Rifle data is similar.

If the state wishes to accomplish its stated goal used to justify the parental signature requirement, there are substantially less burdensome alternative to maintain public safety and restrict firearm possession to responsible persons. For instance, the state could deny FOID cards to people who have been adjudicated as juvenile delinquents as a minor - - - except that they already have done so, or they could prohibit 18 year olds who have been convicted of a misdemeanor[6] from having a FOID card - - except that they already have, or they could deny FOID cards to 18 year olds that have been in a mental institution in the previous five years - - except that they already do. Felons and domestic abusers? Also denied FOID cards. Illegal aliens? No FOID cards for them. Drug addicts? They get the same FOID card as issued to illegal aliens, which is none. In fact, the number of gun control laws on the books in Illinois is genuinely staggering, and this, perhaps itself, is the best evidence of the invidious violations of Second Amendment rights that citizens of this state have been required to put up with for years.

---

[6] This is probably an unconstitutional restriction as well. But as Plaintiff has never been convicted of any crime, and has not been denied a FOID card on this ground, she lacks standing to make such a challenge, and no such challenge is made in this case. But it remains interesting that, under current law, if an 18, 19 or 20 year old wrote a check for $1.00 more than was in her bank account, due simply to an accounting error, she could find herself disqualified from being issued a FOID card and possessing a firearm in Illinois, even if her mother could and would sign the FOID application.

These are all alternatives, already in effect in Illinois, that are less burdensome alternatives to accomplish Defendant's goal than a total ban on gun possession by 18 year olds who are not fortunate enough to have a parent who is willing or able to sign the FOID application and promise to be civilly liable for it.

Certainly, Defendant will attempt to argue that some language in *Heller* allows for the restrictions challenged in this case. "For instance, Defendants in these types of cases like to refer to the dicta in *Heller* listing certain regulations as "presumptively lawful." Although *Heller* and *McDonald* described certain laws as "presumptively lawful," the Supreme Court did not create an actual presumption that a plaintiff is required to "rebut," []. Defendants are still required to establish that their regulatory efforts are constitutional." *Kole v. Village*, Case No. 11 C 3871. N.D. Illinois, Eastern Division. April 19, 2013. Defendants do not even try to argue that their ban survives strict scrutiny.

As far as the intermediate scrutiny suggested by Defendant, not a single one of the cases cited by Defendant to justify that level of scrutiny has anything whatsoever do to with either private possession of any kind firearm in the home (which is where the right is the absolute strongest), or a long gun like a rifle or shotgun. Not one of them. They also have nothing to do with requiring parental consent, like in this case and *Planned Parenthood v. Danforth*, 428 U.S. 52 (U.S. 1976).

What they generally have in common is they deal with the carrying of handguns outside of the home (and likely conflict with the 7th Circuit's decision in *Moore v. Madigan*, 708 F.3d 901, 921 (7th Cir. 2013) and regulations on commercial transactions. Again, in this case, Plaintiff simply wants to keep a shotgun, in her home, for private self-defense. She is not asking to carry the gun with her any place other than her home. She is not asking to remove serial

numbers.  She is not asking for permission to cut the barrel to less than 18 inches.  Plaintiff is not even specifying whether she wants to buy the gun from a licensed federally regulated dealer, or from a private party.  Again, nearly anything will do from Plaintiff's perspective.  Plaintiff is willing to buy whatever kind of firearm that this Court ultimately allows, even if this Court, for instance, finds that double barrel shotguns are not protected, only semi-automatic or pump actions shotguns.  An M1 Carbine, a Mauser bolt action rifle nearly any kind of firearm in common use at this time would allow Plaintiff to provide for her own defense in her home.  At the end of the day, Plaintiff desires to possess some kind of arms, but Defendant is prohibiting all kinds of arms, as in order to acquire or possess these items in Illinois requires a FOID card, and Illinois will not issue her one.

In any event, the total restriction on possession of *all* firearms without parental consent is a poor fit.  Time, place and manner restrictions may be a more appropriate fit, but time, place and manner restrictions are not at issue here, only Illinois' total ban on possession of firearms by all 18, 19 or 20 year olds without parental consent.

## CONCLUSION

For the foregoing reasons, this Court should enter summary judgment in favor of Plaintiff, and enter an order finding the requirement for 18, 19 or 20 year olds to provide written consent from their parents to be issued a FOID card unconstitutional, directing Defendant to process and approve Plaintiff's FOID card application, and issue Plaintiff a valid FOID card within 30 days, and awarding Plaintiff her reasonable court costs and attorney fees, pursuant to 42 U.S.C. 1988, and for such other, further and different relief as is allowed by law or equity.

Dated:  June 24, 2013 Respectfully Submitted,


By:s/Thomas G. Maag

Thomas G. Maag
Maag Law Firm, LLC
22 West Lorena Avenue
Wood River, IL  62095

Phone:  618-216-5291

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2013, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Joshua D. Ratz


Dated:  July 18, 2013 *s/*Thomas G. Maag