IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TEMPEST HORSLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-CV-321 -NJR-SCW |
| | ) |
| JESSICA TRAME, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Tempest Horsley ("Plaintiff") brings this action against the Chief of the Firearms Service Bureau of Illinois, Jessica Trame ("Defendant"), pursuant to 42 U.S.C. § 1983, alleging that her Second Amendment right to bear arms is violated by the Firearm Owners Identification ("FOID") Card Act, 430 ILCS §§ 65/0.01-65/16-3. The parties have stipulated that the legal issue to be resolved by the Court is whether the age requirement under the FOID Card Act is constitutional. (Doc. 21). If this Court finds the Act unconstitutional, Plaintiff seeks an order compelling Defendant to process her FOID Card application without the signature of a parent or guardian.

The parties submitted cross motions for summary judgment, and a hearing was held on July 7, 2014. For the following reasons, Defendant's motion is granted, and Plaintiff's motion is denied.

**Background**

When she was 18 years old, Plaintiff sought to purchase a double barrel shotgun for use in home protection. In Illinois, most persons are required to possess a Firearm Owners Identification Card to lawfully acquire or possess a firearm. 430 ILCS § 65/2. Under the FOID Card Act, an applicant must provide evidence to the Department of State Police that, "[h]e or she is 21 years of age or older, or if he or she is under 21 years of age that he or she has the written consent of his or her parent or legal guardian to possess and acquire firearms and firearm ammunition…." 430 ILCS § 65/4.

Plaintiff, unable to obtain written consent from her parent or guardian, applied for a FOID Card, but her application was returned to her as "incomplete." Plaintiff alleges that the return of her application is a constructive denial of the application. The FOID Card Act provides for appeal of denials to the Director of State Police for a hearing, *see* 430 ILSC § 65/10, but Plaintiff did not appeal.

**Analysis**

Summary Judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). A material fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists, and summary judgment is inappropriate, when "the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Id*. Cross motions for summary judgment are treated separately under the standards applicable to each. *See McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 504 n. 4 (7th Cir. 2008).

The parties have no dispute as to a material fact in this case and, in fact, they have stipulated to the legal issue presented by Plaintiff's complaint. As such, the case is properly decided on the legal arguments presented in the pending motions for summary judgment. The parties have raised two primary issues in the pending motions: (1) whether Plaintiff's claims are ripe and justiciable, because she did not administratively appeal the denial of her application, and (2) whether the Second Amendment protects Plaintiff from the FOID Card Act regulation she challenges.

I. *Exhaustion*

Defendant contends that Plaintiff's failure to appeal the denial of her FOID application renders her complaint unripe, or non-justiciable. The general rule concerning exhaustion is "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 193 (1969) (*quoting Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)). Where a statutory requirement of exhaustion is not explicit, however, "courts are guided by congressional intent in determining whether applications of the doctrine would be consistent with the statutory scheme." *Patsy v. Florida Bd. Of Regents*, 457 U.S. 496, 502 n. 4 (1982). In *Patsy*, the Supreme Court held that "[b]ased on the legislative histories of both § 1983 and § 1997e . . . exhaustion of state administrative remedies

should not be required as a prerequisite to bringing an action pursuant to § 1983." *Id*. at 516. Likewise, the general rule in the Seventh Circuit is that federal civil rights suits do not require exhaustion. *See Daniels v. Area Plan Com'n of Allen County*, 306 F.3d 445, 453 (7th Cir. 2002).

According to Defendant, Plaintiff could appeal her FOID application even now and perhaps obtain relief. There is nothing before the Court that suggests such an appeal has ever been successful (or even attempted). Nonetheless, the Court finds it appropriate to follow the general rule stemming from *Patsy* that exhaustion of administrative remedies is not necessary for § 1983 claims. Therefore, Plaintiff was not required to exercise her administrative appeal opportunity under the FOID Card Act, and this case is ripe for review.

II. *Second Amendment Framework*

The Supreme Court recognized the right to keep and bear arms for self-defense under the Second Amendment in *District of Columbia v. Heller*, 554 U.S. 570 (2008). *McDonald v. City of Chicago* extended that protection against state and local governmental infringement through the Fourteenth Amendment. 561 U.S. 742 (2010). The question presented here is whether a state law that restricts, but does not categorically ban, the ability of individuals aged 18 to 20 years old to possess a firearm conflicts with the Second Amendment.

The framework for analyzing a Second Amendment challenge is two-fold. First, a district court must make a threshold inquiry into whether the restricted activity is

protected by the Second Amendment. If so, the Court must determine the level of scrutiny applicable to the prohibition. *Ezell v. City of Chicago*, 651 F.3d 684, 700-703 (7th Cir. 2011).

Under threshold analysis, "[t]he answer requires a textual and historical inquiry into original meaning." *Id*. at 701; *see Heller*, 554 U.S. at 634-35 ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad."). When a state or local governmental action is challenged, the scope is limited to how the right was understood when the 14th Amendment was ratified. *Ezell*, 651 F. 3d at 702. "Accordingly, if the government can establish that a challenged firearms law regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment – 1791 or 1868 – then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review." *Ezell*, 651 F.3d at 702-703.

The Second Amendment's core has historically been limited for certain individuals and under certain circumstances. *Heller*, 554 U.S. at 626-27. The *Heller* Court stated,

> From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purposes…[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id*. The Court recognized that certain "longstanding prohibitions in the possession of firearms" would pass constitutional muster. *Id.* at 626.

In *National Rifle Ass'n of America v. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATFE")*, the Fifth Circuit made an extensive review of founding era attitudes toward firearm ownership and minors. 700 F.3d 185, 200-203 (2012). The *BATFE* court held that regulating minors' ability to keep and bear arms was a longstanding prohibition. *Id.* Second Amendment protection was afforded to the virtuous citizen, and regulation or prohibition of firearms for those who were unvirtuous, like felons, or those incapable of civic virtue, like minors, would have been supported. *Id*. at 201-02. Also of note, the age of minority at common law applied to persons under the age of 21 up until the 1970's. *Id*. Thus, "[i]f a representative citizen of the founding era conceived of a 'minor' as an individual who was unworthy of the Second Amendment guarantee, and conceived of 18-to-20-year-old's as 'minors,' then it stands to reason that the citizen would have supported restricting an 18-to-20-year-old's right to keep and bear arms." *Id*. at 202.

Plaintiff cites to provisions of the Federal Militia Act of 1792, and other similar state regulations, as evidence that minors 18-20 years old have historically enjoyed the Second Amendment guarantee (Doc. 10, p. 8-9). The argument follows that because a minor could be a militia member, and be armed, the Second Amendment prohibits restrictions on those individuals. As Defendant points out, however, the Federal Militia

Act itself provided for state exceptions to conscription. 1 Stat. 272, § 2. Defendant cites to *In re Opinion of the Justices*, a Massachusetts Supreme Court decision upholding an exemption from militia enrollment persons under 21 and over 30 years of age (Doc. 25, p. 9); *see* 22 Pick. 571, 576, 39 Mass. 571, 576 (Mass. 1838). Though in some states a minor could be, and was, drafted into militia service, the ability to regulate enrollment to those 21 years and above was also utilized. The weight of historical evidence supports Defendant's position.

This Court agrees with the reasoning in *BATFE* and finds that the FOID Card Act's age restriction/parental signature provisions amount to a longstanding prohibition and fall outside of the scope of the Second Amendment. Nonetheless, the Court will consider whether scrutiny analysis would find the challenged FOID Card Act provisions unconstitutional if they fell within the Second Amendment's scope.

*Heller* did not specify which level of scrutiny applied under a Second Amendment challenge, other than to rule out rational basis. *Ezell*, 651 F.3d at 706; *see Heller*, 554 U.S. at 628 n. 27. The Seventh Circuit applies a form of intermediate scrutiny on laws categorically restricting gun ownership from felons, *see United States. v. Williams*, 616 F.3d 685 (7th Cir. 2010), and domestic violence misdemeanants, *see United States v. Skoein*, 614 F.3d 638 (7th Cir. 2010). "[A] severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public interest justification and a close fit between the government's means and its end." *Ezell*, 651 F.3d at 708. However, "laws restricting activity lying close to the margins of the Second Amendment

right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justifiable." *Id*. at 708.

Plaintiff argues that strict scrutiny applies because the FOID Card Act age restriction/signature provisions constitute a ban on firearm ownership by minors aged 18-20 (*see* Doc. 10, p. 10). Such a ban, she contends, directly impacts the core Second Amendment protection of armed home self-defense. The FOID Card Act, however, does not amount to an outright ban. Minors aged 18-20, and even younger, have an opportunity to obtain a FOID card by supplying a parental signature. 430 ILCS § 65/4. Even if a parental signature is unavailable, a rejected applicant can appeal to the Director of the Illinois Department of State Police. 430 ILCS § 65/10. In any event, the argument is not strict verses intermediate scrutiny, but rather how strictly to apply intermediate scrutiny. And, given the regulatory nature of the FOID Card Act provisions in controversy, "the modest burdens may be more easily justifiable." *Ezell*, 651 F.3d at 708.

The governmental interest of public safety, or preventing armed mayhem, is not disputed in this case. The question is whether logic and data show a substantial relationship between the regulation and the government's interest. Plaintiff argues that (1) the logic behind the FOID Card Act provisions fails, because it erroneously presumes that 18-to-20 year olds who can obtain a parental signature are less dangerous than those who cannot; (2) an outright ban on 18-to-20 year olds to possess firearms for home self-defense is categorically protected by the Second Amendment; and (3) the data does

not support a substantial relation between the prohibition and the government's stated goal.

The Court finds that Plaintiff's first argument fails. Many courts have noted that the risk of irresponsibility is higher in minors, and consequently, the danger of damage is greater. The parental signature acts like a co-signature for a loan; it provides for an individualized assessment of the applicant's maturity, and it opens the parent who signs on behalf of a minor to liability that may be caused by firearm ownership. As a result, the danger is minimized with respect to damages for those minors who are able to supply a parental signature.

Similarly, Plaintiff's second argument fails. The FOID Card Act restriction is not an outright ban, and even so, categorical restrictions were recognized in *Heller* and have been found to be constitutional. *See Williams*, 616 F.3d 685 (7th Cir. 2010) (categorically restricting gun ownership from felons); *Skoien*, 614 F.3d 638 (7th Cir. 2010) (categorically restricting gun ownership from domestic violence misdemeanants).

Finally, the Court finds that Defendant has established a substantial relation between the FOID Card Act restrictions and its stated goal to protect public safety and prevent armed mayhem. Similar to the evidence presented in *BATFE*, Defendant has presented a plethora of statistical analysis relating minors under age 21 to violent and gun related crimes. (*see* Doc. 25, pp. 15-16); *see also BATFE*, 700 F.3d at 208 (quoting S. Rep. No. 90-1097, at 77). Indeed, logic and data both support the legitimate concern of "emotionally immature, or thrill-bent juveniles and minors prone to criminal behavior."

*Id.* The FOID Card Act's restrictions substantially relate to the government's stated goals. Additionally, the FOID Card Act provides a way out for minors to possess or own firearms with a parental signature, the merits of which have been discussed above, or even to potentially plead their case as a responsible individual to the Director of State Police should a parent or guardian be unavailable. The FOID Card Act's restrictions on minors are substantially related, by logic and data, to the government's goals.

## Conclusion

For the reasons set forth above, Defendant's Cross Motion for Summary Judgment (Doc. 24) is **GRANTED**, and Plaintiff's Motion for Summary Judgment (Doc. 10) is **DENIED**. Judgment shall be entered in favor of Defendant and against Plaintiff. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close the case on this Court's docket.

**IT IS SO ORDERED.**

**DATED: July 28, 2014**

> s/ Nancy J. Rosenstengel
> **NANCY J. ROSENSTENGEL**
> **United States District Judge**